JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Robert N. Fort, Jr., appeals from the judgment of the Cuyahoga County Court of Common Pleas, rendered after a guilty plea, finding him guilty of drug trafficking, preparation of drugs for sale, possession of drugs and possession of criminal tools.
{¶ 2} On March 27, 2001, the Cuyahoga County Grand Jury indicted appellant on seven counts. Counts one, two and three charged appellant with trafficking in cocaine, preparation of drugs for sale and possession of drugs in an amount less than five grams relating to an incident that occurred on November 16, 2000. Counts four, five and six of the indictment related to an incident that occurred on November 22, 2000 and charged appellant with trafficking in cocaine, preparation of drugs for sale and possession of drugs in an amount exceeding ten grams but less than one hundred grams. Count eight of the indictment charged appellant with possession of criminal tools, i.e., a cellular telephone. Count seven of the indictment applied only to appellant's co-defendant, Clare Cogan.
{¶ 3} Appellant was arraigned on April 16, 2001 and assigned defense counsel from the Office of the Public Defender. On May 11, 2001, however, William LeFaiver filed a notice of appearance as retained counsel for appellant.
{¶ 4} At a hearing on September 27, 2001, appellant and Cogan, both represented by LeFaiver, pled guilty to the indictment and the trial court accepted the pleas.
{¶ 5} The record reflects that on November 16, 2000, a confidential reliable informant (CRI), working with the Westshore Enforcement Bureau, contacted appellant and arranged for the purchase of cocaine. The CRI met with appellant at his home in Lakewood and handed him $175 in marked money in exchange for 3.16 grams of cocaine. After the transaction was completed, appellant handed the money to Cogan, who was present during the transaction.
{¶ 6} On November 22, 2000, the CRI made arrangements with appellant for the purchase of an ounce of cocaine in exchange for $1,200. The CRI and an undercover agent went to appellant's home. After the deal was confirmed, appellant instructed the CRI and undercover detective to follow him to where they would purchase the cocaine. Appellant led the CRI and detective to a residence in Akron, Ohio. Appellant entered the home for a few minutes and when he came out, he approached the CRI's vehicle and collected $1,200 from the CRI in exchange for 27.66 grams of cocaine. Appellant returned $40 to the CRI and then went back into the residence. The CRI and detective left the scene. Akron police officers subsequently arrested appellant as he drove away from the home.
{¶ 7} A search of appellant's Lakewood home, executed on November 22, 2000, produced various drug paraphernalia.[1]
{¶ 8} On October 30, 2001, the trial court sentenced appellant to a total of six and a-half years incarceration and a $20,000 fine.
{¶ 9} Appellant timely appealed, raising eight assignments of error for our review. For analytical purposes, we will consider the second assignment of error last.
{¶ 10} In his first assignment of error, appellant contends that the trial court knew or should have known of a possible conflict of interest posed by defense counsel's dual representation of him and Cogan and, therefore, the trial court had a duty to inquire into the possible conflict to determine whether defense counsel's loyalties were, in fact, divided. According to appellant, the trial court's failure to so inquire requires that he be allowed to withdraw his plea.
{¶ 11} [W]here a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. * * * Where a trial court breaches its affirmative duty to inquire, a criminal defendant's rights to counsel and to a fair trial are impermissibly imperiled and prejudice or `adverse effect' will be presumed. State v. Gillard (1992), 64 Ohio St.3d 304, 311-312, citing Holloway v. Arkansas (1978), 435 U.S. 475; Cuyler v. Sullivan (1980), 446 U.S. 335; Wood v. Georgia (1981), 450 U.S. 261.
{¶ 12} In the absence of special circumstances, however, it is reasonable for the trial court to assume that multiple representation entails no conflict or that the lawyer and his clients knowingly accepted such risk of conflict as may be inherent in such a representation. State v. Manross (1988), 40 Ohio St.3d 180, 182, citing Cuyler, supra. Thus, a trial court does not have an affirmative duty in every case involving multiple representation to conduct an inquiry into the possibility that a conflict of interest exists. See, e.g., Cuyler, supra.
{¶ 13} Nothing in the circumstances of this case indicates that the trial court had an affirmative duty to inquire whether LeFaiver's dual representation presented a conflict of interest. First, neither appellant nor Cogan objected to the multiple representation. Indeed, the record indicates that although the trial court initially appointed defense counsel for appellant from the Office of the Public Defender, appellant discharged his court-appointed counsel and then retained the same counsel as Cogan. Thus, it was reasonable for the trial judge to assume that appellant knowingly accepted any risk of conflict that LeFaiver's dual representation presented.
{¶ 14} Furthermore, there is no conflict [of interest] where the two defenses did not result in one [defendant] assigning blame to the other and where both defendants had a common interest in attacking the credibility of the prosecution witnesses. Manross, supra, at 182, citing Kaplan v. Bombard (C.A.2, 1978), 573 F.2d 708. Here, the defenses presented by appellant and Cogan were not in conflict. Both pled guilty to the offenses charged and neither disputed their involvement in any of the offenses or tried to argue that the other was culpable. To the contrary, the record reflects that at the plea hearing, when the prosecutor reported that count seven of the indictment against Clare Cogan arose out of the search warrant executed at appellant's home on November 22, 2002, appellant stated, That was all mine. She didn't even know what was there.
{¶ 15} Accordingly, we hold that the trial court did not have an affirmative duty under the circumstances of this case to inquire into the propriety of LeFaiver's multiple representation.
{¶ 16} Absent an affirmative duty to inquire, in order to establish a Sixth Amendment claim of ineffective assistance of counsel, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his counsel's performance. State v. Keith (1997), 79 Ohio St.3d 514, 535, citing Cuyler, supra; Manross, supra; State v. Torres (May 21, 1991), Cuyahoga App. No. 60387. Appellant does not state with any particularity either the conflict of interest or the adverse effect upon counsel's performance. We find nothing, from our review of the record, that would raise an inference of an actual conflict of interest.
{¶ 17} Appellant's first assignment of error is therefore overruled.
{¶ 18} In his third assignment of error, appellant argues that the trial court failed to comply with the requirements of Crim.R. 11(C).
{¶ 19} Crim.R. 11(C) provides, in pertinent part:
 {¶ 20} (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 21} (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 22} (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 23} (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
{¶ 24} The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether or not to plead guilty. State v. Ballard (1981), 66 Ohio St.2d 473, 479-480.
{¶ 25} In determining whether the trial court has satisfied its duties, reviewing courts have distinguished constitutional and non-constitutional rights. Ballard; supra; State v. Stewart (1977),51 Ohio St.2d 86, 93; State v. Gibson (1986), 34 Ohio App.3d 146, 147. Under the more stringent standard for constitutionally protected rights, a trial court's acceptance of a guilty plea will be affirmed only if the trial court engaged in meaningful dialogue with the defendant which, in substance, explained the pertinent constitutional rights in a manner reasonably intelligible to that defendant. Ballard, supra, at paragraph two of the syllabus.
{¶ 26} Under the broader standard for rights not protected by the constitution, reviewing courts consider whether the trial court substantially complied with the requirements of Crim.R. 11(C)(2) and whether the defendant subjectively understood the implications of his or her plea and the nature of the rights he or she was waiving. State v. Nero (1990), 56 Ohio St.3d 106, 108; Stewart, supra at 93. The Ohio Supreme Court has observed that there is no easy or exact way to determine what someone subjectively understands. State v. Carter (1979),60 Ohio St.2d 34, 38. Accordingly, if the defendant receives the proper information, then we can ordinarily assume that he understands that information. [In deciding whether the defendant had the required information], we look at all the particular facts and circumstances surrounding the case. Id. at 38.
{¶ 27} The record reflects the following colloquoy:
 {¶ 28} THE COURT: It's my understanding you two want to plead to the indictment; is that correct?
{¶ 29} COGAN: Yes, your Honor.
{¶ 30} THE COURT: Yes or no, Mr. Fort.
{¶ 31} FORT: I guess so.
 {¶ 32} THE COURT: I don't want to hear I guess so. If you want to plead, you plead. It's yes or no.
{¶ 33} (Appellant conferring with counsel.)
{¶ 34} FORT: I guess, yes.
 {¶ 35} THE COURT: There we go again. Is it yes? If you don't want to plead, it's dandy with me. That's why they built the courthouse, we have trials. That's why we have courtrooms and jury boxes. If you want one, you can have one. You want to plea or don't want to plead?
{¶ 36} FORT: Yes, I'll plead.
{¶ 37} The record also reflects that before accepting the plea, the trial court inquired, Either one of you under the influence of drugs, alcohol or medication here today? and appellant responded, Yes. The trial court did not ask any follow-up questions, however, in response to appellant's affirmative answer.
{¶ 38} Appellant contends that in light of this affirmative response and his initial reluctance to plead, the trial court should have questioned him further to determine whether he was able to make a knowing and intelligent plea. Appellant contends that the court's failure to do so indicates that the court failed to comply with the requirements of Crim.R. 11(C). Appellant also contends that he was not informed of the potential penalties arising out of his plea. Appellant's arguments are without merit.
{¶ 39} First, the record does not support appellant's contention that he was not informed of the potential penalties. To the contrary, the record demonstrates that at the request of the court, the prosecutor outlined each count of the indictment, identifying the level of felony associated with each count and the potential penalties and fines for each count, including which counts required the imposition of a mandatory prison term.
{¶ 40} Moreover, although it would have been better if the trial court had inquired further after appellant responded affirmatively to the court's question regarding whether he was under the influence of alcohol or medication, nothing in the record suggests that appellant did not understand the implications of the plea or the rights he waived in entering that plea. Appellant acted appropriately throughout the hearing and gave appropriate responses to the other questions the trial judge asked him.
{¶ 41} Furthermore, even a finding that the trial court failed to comply with the requirements of Crim.R. 11(C) in this case by not inquiring further would not end our inquiry. A defendant who challenges his plea on the basis that it was not knowingly, intelligently and voluntarily made must demonstrate a prejudicial effect. State v. Johnson (1988), 40 Ohio St.3d 130, 133; State v. Stewart (1977), 51 Ohio St.2d 86,93. The test is whether the plea would have otherwise been made. Id.; Nero, supra at 108.
{¶ 42} Here, appellant has failed to demonstrate that he was prejudiced in any way by his plea. Appellant never tried to withdraw his plea on the basis that he was under the influence of drugs or alcohol when he plead. Moreover, nowhere in his brief does appellant allege that he would not have pled guilty if the trial court had inquired further regarding whether he was under the influence of alcohol or drugs. Rather, appellant's argument is that the court did not comply with Crim.R. 11(C) and, therefore, his plea was ipso facto involuntary. Without a showing of prejudice, however, appellant's claim fails.
{¶ 43} Appellant's third assignment of error is therefore overruled.
{¶ 44} In his fourth assignment of error, appellant contends that the trial court lacked jurisdiction to convict and sentence him regarding counts four, five, six and eight of the indictment because those offenses occurred in Summit, rather than Cuyahoga County.
{¶ 45} Venue is neither a jurisdictional issue nor a material element of a criminal offense. State v. McCartney (1988),55 Ohio App.3d 170, citing State v. Loucks (1971), 28 Ohio App.2d 77. Proper venue is a fact which must be proved in criminal prosecutions unless waived by the accused. McCartney, supra, citing State v. Headley (1983), 6 Ohio St.3d 475, 477. A challenge to venue must be raised before trial begins or it is considered waived. State v. Otto (Mar. 7, 2001), 7th Dist. No. 97-BA-57, citing State v. Williams (1988), 53 Ohio App.3d 1,5. Moreover, a guilty plea precludes a defendant from challenging the factual issue of venue on appeal. Otto, supra; State v. Terry (May 21, 1999), 2nd Dist. No. 99-CA-20; McCartney, supra.
{¶ 46} In this case, appellant entered a plea of guilty to all counts of the indictment. Therefore, appellant's plea precludes him from challenging this factual issue on appeal.
{¶ 47} Moreover, even if the issue were properly raised on appeal, R.C. 2901.12(H), part of Ohio's venue statute, provides that when an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offense in any jurisdiction in which one of those offenses or any element of one of those offenses occurred.
{¶ 48} In this case, appellant engaged in a course of criminal conduct on November 22, 2000, in which he made arrangements with a CRI, while in Cuyahoga County, for the sale of an ounce of cocaine in exchange for $1,200. After the deal was confirmed, appellant instructed the CRI and an undercover detective to follow him to the location where the cocaine would be purchased. Appellant led them to a house in Akron, where the sale was completed.
{¶ 49} On these facts, it is apparent that on November 22, 2000, appellant offer[ed] to sell a controlled substance, a violation of R.C.2925.03(A)(1), trafficking in drugs, while in Cuyahoga County. Accordingly, one of the offenses relating to appellant's course of criminal conduct occurred in Cuyahoga County and therefore, pursuant to R.C. 2901.12(H), venue was proper there.
{¶ 50} Appellant's fourth assignment of error is therefore overruled.
{¶ 51} Appellant's fifth and sixth assignments of error are related and therefore will be considered together. In his fifth assignment of error, appellant contends that although he pled guilty to the charges of drug trafficking, preparation of drugs for sale and possession of drugs, they were potentially allied offenses of similar import, subjecting him to conviction of, and sentence for, only one offense. Therefore, appellant contends, the trial judge should have inquired into the nature of the offenses before sentencing pursuant to R.C. 2941.25.[2] In his sixth assignment of error, appellant contends that the offenses did, in fact, constitute allied offenses of similar import and, therefore, the trial court should not have convicted and sentenced him on all counts. Appellant's arguments are without merit.
{¶ 52} First, we note that appellant failed to raise this issue in the trial court and therefore has waived it for purposes of appeal. See State v. Powell (1993), 87 Ohio App.3d 157, 169, citing State v. Comen (1990), 50 Ohio St.3d 206, 211.
{¶ 53} Moreover, even a cursory review of the case law from this district indicates that this court has consistently and repeatedly rejected appellant's allied offenses argument under various drug statutes. See, e.g., State v. Sloan (May 30, 2002), Cuyahoga App. No. 79832; State v. Franklin (May 10, 2001), Cuyahoga App. No. 77385, citing State v. Gulino (May 27, 1999), Cuyahoga App. No. 75560; State v. Jolly (July 10, 1997), Cuyahoga App. No. 70482; State v. Rose (1997),118 Ohio App.3d 864; State v. Hatcher (July 31, 1997), Cuyahoga App. No. 70857; State v. Williams (1995), 105 Ohio App.3d 471, citing State v. Powell (1993), 87 Ohio App.3d 157, 169-170; State v. Jordan (1992),73 Ohio App.3d 524, 541-542; State v. Gilbert (Sept. 22, 1994), Cuyahoga App. No. 66269; State v. Jackson (Aug. 4, 1994), Cuyahoga App. No. 65957. This court has also rejected appellant's argument that State v. Roberts (1980), 62 Ohio St.2d 170, is controlling. See State v. White (Jan. 4, 1996), Cuyahoga App. No. 68424. Thus, even considering appellant's argument under a plain error analysis, see, e.g., State v. Latson (1999), 133 Ohio App.3d 475, it fails.
{¶ 54} Because it was apparent that the offenses were not allied offenses of similar import, the trial court had no duty to conduct a hearing pursuant to R.C. 2941.25.
{¶ 55} Appellant's fifth and sixth assignments of error are therefore overruled.
{¶ 56} In his seventh assignment of error, appellant asserts that the trial court erred in sentencing. Specifically, appellant contends that because he had not previously served a prison term, he was entitled to the presumption that the minimum prison term should be imposed pursuant to R.C. 2929.14(B), and that the judge failed to indulge that presumption.
{¶ 57} In sentencing appellant, the trial court stated:
 {¶ 58} Now the Court's carefully evaluated the evidence in this case — I consider it an extremely serious crime. The Court, under the law, finds your conduct reprehensible. You've been given numerous chances in the past and you're out there selling drugs. And you're selling drugs with your fiancee and a child present in your home and endangering them where people get killed. This is where robberies take place, shootings take place, the — this is — robbing drug houses is a way of life for people. They come in — if you don't mind stop talking when I'm talking, all right.
{¶ 59} DEFENDANT: I'm sorry.
 {¶ 60} THE COURT: This is the way of life of people, they come in and this is part of the industry, part of the business that you've chosen. People can get — ma'am, the Court's speaking. I don't want to be in competition with you. All right. Be quiet.
 {¶ 61} You're endangering the child, the fiancee, you're endangering their lives, endangering your own life engaging in this activity, but to endanger their's is even more reckless. Selling out of the home, doing that, and this is a terrible business you're in. It's part of a crime business. This is — you're engaging in crime.
 {¶ 62} I see recidivism would be highly unlikely (sic) due to your total contempt for the law, your total contempt for society that you've demonstrated in the past from your record. You've been given chance after chance after chance and you've thumbed your nose at all of them. The — you've had the chance, again to rehabilitate. You have this 1997 report, you knew what you had to do. They told you what you had to do. You didn't do it. Instead you chose to go out and keep dealing. You chose a life of crime. You chose not to work legitimately because you had the opportunity. You declined that.
 {¶ 63} Not sending you to prison would be irresponsible to this Court. The Court finds you are not amenable to any community control sanction, you've shown you're not amenable and any community control sanction would demean the seriousness of the conduct and not adequately protect the public from you and protect yourself from you.
 {¶ 64} The Court is going to give you the sentence appropriate to 2929. And for the November 16th event we're going to — the Court's going to sentence you to nine months in count one and nine months in count two for eighteen months total, a year and a-half on the November 16th event.
 {¶ 65} We're also going to sentence you to nine months in count three to run concurrent with the first two, to the — for the September 22nd event in count four, which is a felony of the third degree. We're going to give you four years consecutive to the other count. The — and in count five for the preparation, one year consecutive to all other counts. In count six you're going to get another four years concurrent, that's a mandatory prison count, also, always is 1925.03 in count four. So you've got four years in each mandatory prison time concurrent. Count eight is a felony four arising out of the November 22nd event, that is going to be one year concurrent. So you got six and a-half years total, in addition the Court is going to fine you $10,000 in both counts four and six for a $20,000 fine.
{¶ 66} Pursuant to R.C. 2929.14(B), if a defendant has not previously served a prison term, the trial court must impose the minimum sentence unless it specifies on the record that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender. R.C. 2929.14(B) states:
 {¶ 67} If the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
{¶ 68} The record indicates that the judge began his sentencing analysis by discussing the seriousness of appellant's crimes and the likelihood of recidivism pursuant to R.C. 2929.12, although he did not specifically identify any of the factors enumerated therein. He found that the offenses were extremely serious because appellant sold drugs from his home, in the presence of his fiancee and her young child. He also found that appellant had ignored many opportunities for rehabilitation and therefore, the chance of recidivism was high.
{¶ 69} After discussing the seriousness of the offenses and appellant's likelihood of recidivism, the trial judge stated his conclusion that appellant must serve a prison term because any community control sanction would demean the seriousness of the conduct and not adequately protect the public.
{¶ 70} The trial judge then sentenced appellant, without acknowledging or discussing the initial presumption that, as an offender who had never served a prison term, he should receive the shortest prison term authorized for each of his offenses.
{¶ 71} The purpose of recorded findings is to confirm that the court's decision-making process included all of the statutorily required sentencing considerations. State v. Edmonson (1999), 86 Ohio St.3d 324,327. The record must show that a judge first considered imposing the minimum * * * sentence and then decided to depart from the statutorily mandated minimum based on one or both of the permitted reasons. Edmonson, 86 Ohio St.3d at 328.
{¶ 72} There is no indication here, however, that the judge was aware of the presumption afforded appellant in R.C. 2929.14(B) or any indication that he began his analysis from that presumption and then departed from it only after finding that the offense was so serious or the risk of future crime so great that the presumption was rebutted. The record clearly reflects that the trial court never acknowledged the presumption nor did it, at any time, note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons. Id. at 326.
{¶ 73} We reject the State's argument that the trial court's general statements about the seriousness of appellant's offenses, his likelihood of recidivism and the need for appellant to serve a prison term to protect himself and the public are sufficient to demonstrate that the trial court complied with R.C. 2929.14(B). Edmonson does not allow implied findings, but requires specific and express reference of relevant factors to show their consideration. State v. DeAmiches (Mar. 1, 2001), Cuyahoga App. No. 77609.
{¶ 74} Finally, although not raised by appellant, we note that R.C. 2929.19(B)(2)(e) requires the trial court to make a finding giving its reasons for selecting a sentence if the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree * * *.
{¶ 75} With respect to the November 16, 2000 incident, appellant was sentenced for three offenses: count one, drug trafficking; count two, preparation of drugs for sale; and count three, possession of drugs. All of the offenses were fifth degree felonies. The maximum penalty for a fifth degree felony is twelve months. R.C. 2929.14(A)(5). Here, the trial court imposed a prison term for the three offenses totaling eighteen months. The trial court did not make any finding, however, regarding why it was imposing more than the maximum sentence.
{¶ 76} Appellant's seventh assignment of error is therefore well taken.
{¶ 77} In his eighth assignment of error, appellant contends that the trial court erred in imposing consecutive sentences.
{¶ 78} R.C. 2929.14(E)(4) governs the imposition of consecutive sentences. It provides that a court may impose consecutive sentences only when it concludes that the sentence is: 1) necessary to protect the public from future crime or to punish the offender; 2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and 3) one of the following applies: a) the offender committed the offenses while awaiting trial or sentencing, under sanction or under post-release control; b) the harm caused by the multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of his offense; or c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime.
{¶ 79} Moreover, R.C. 2929.19(B)(2) provides that:
 {¶ 80} The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
{¶ 81} * * *
 {¶ 82} (c) If it imposes consecutive sentences under section 2929.12 of the Revised Code, its reasons for imposing the consecutive sentences.
{¶ 83} Thus, R.C. 2929.14(E)(4) requires the trial court to make at least three findings prior to sentencing an offender to consecutive sentences and, pursuant to R.C. 2929.19(B)(2)(c), to give the reasons behind its findings. Failure to sufficiently state these reasons on the record constitutes reversible error. State v. Gary (2001),141 Ohio App.3d 194, 196-198, citing State v. Albert (1997),124 Ohio App.3d 225.
{¶ 84} Here, the trial court did not make the necessary statutory findings to impose consecutive sentences. The trial court made no findings that consecutive sentences (1) were necessary to protect the public and not disproportionate to the seriousness of the offender's conduct or that (2) the offenses were committed while appellant was awaiting trial or sentencing, the harm caused by the offenses was so great that a single prison term would not adequately reflect the seriousness of appellant's conduct or appellant's criminal history demonstrated that consecutive sentences were necessary to protect the public.
{¶ 85} The State argues that the trial court's statements that You've shown you're not amenable to any community control sanction and any community control sanction would demean the seriousness of the conduct and not adequately protect the public from you and protect yourself from you, coupled with the trial court's finding that appellant had failed to rehabilitate himself and recidivism was likely, are sufficient findings to impose consecutive sentences. We disagree.
{¶ 86} First, it is apparent from the record that the trial court's statements were made in the context of considering whether the court would sentence appellant to a prison term or a community control sanction. The trial judge stated, Not sending you to prison would be irresponsible to this Court. The Court finds you are not amenable to any community control sanction, and then noted, pursuant to R.C. 2929.13(D)(1) and (2), that a community control sanction would not be appropriate because it would not adequately protect the public from future crime and would demean the seriousness of the offense. Thus, the trial court's findings do not indicate that the trial court considered the legislative directive contained in R.C. 2929.14(E)(4) for imposing consecutive sentences.
{¶ 87} Even assuming for the sake of argument that the findings somehow relate to imposing consecutive sentences, however, it is apparent that the trial court made no finding that the consecutive sentences were not disproportionate to the seriousness o appellant's conduct and the danger he posed to the public.[3] The trial court's general statements that appellant's conduct was reprehensible and his offenses extremely serious indicate why the trial court believed a prison term was necessary but are not a finding that consecutive sentences were not disproportionate to the seriousness of appellant's conduct, as required by R.C. 2929.14(E)(4).
{¶ 88} Finally, we note that the trial court failed to give adequate reasons, as required by R.C. 2929.19(B)(2), to support its findings. References to a defendant's criminal record, the seriousness of his offenses, his likelihood of recidivism, etc., without explaining how those factors relate to or impact the specific findings required by R.C.2929.14(E)(4) are not sufficient to satisfy the requirements of R.C.2929.19(B)(2). State v. Givner (July 5, 2001), Cuyahoga App. No. 78625.
{¶ 89} Appellant's eighth assignment of error is well taken.
{¶ 90} In his second assignment of error, appellant contends that he was denied his constitutional right to effective assistance of counsel because his counsel failed to: 1) advise him of a possible conflict of interest due to counsel's dual representation of appellant and Cogan; 2) object to the imposition of consecutive sentences; 3) object to multiple convictions for the same offenses; and 4) advise him that venue was not proper regarding counts four, five, six and eight of the indictment.
{¶ 91} As explained by the Ohio Supreme Court in State v. Campbell (1994), 69 Ohio St.3d 38, 43:
 {¶ 92} A defendant who claims ineffective assistance must show deficient performance by counsel and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668. The performance inquiry requires the court to ask whether, considering all the circumstances, `counsel's representation fell below an objective standard of reasonableness.' Id. at 688. The court `must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *.' Id. at 689. The prejudice inquiry `is whether there is a reasonable probability that, absent the errors, the factfinder would have' acquitted the defendant * * *. Id. at 695. `A reasonable probability is a probability sufficient to undermine confidence in an outcome.' Id. at 694.
{¶ 93} We have already determined that there is nothing in the record to indicate there was a conflict of interest in defense counsel's dual representation of appellant and Cogan. Moreover, there is nothing in the record to support appellant's allegation that defense counsel never informed him of a possible conflict of interest when he was retained by appellant. Therefore, counsel's alleged failure to disclose a potential conflict to appellant was not deficient.
{¶ 94} Likewise, we have determined that venue in Cuyahoga County was proper for all of the offenses and that the offenses were not allied offenses of similar import. Accordingly, defense counsel's failure to object to venue or multiple convictions for the same offenses was not deficient.
{¶ 95} We did conclude, however, that the trial court erred in imposing consecutive sentences. Thus, we must determine whether defense counsel's failure to object at sentencing denied appellant his right to effective assistance of counsel.
{¶ 96} Our conclusion that the trial court erred in imposing consecutive sentences is based on our determination that the trial court did not make the appropriate statutory findings necessary to impose consecutive sentences. We did not determine that consecutive sentences were not warranted in this case. Accordingly, although it would have been better if defense counsel had advised the trial court that it needed to make the requisite statutory findings before imposing consecutive sentences, we cannot conclude that counsel's failure to object to the imposition of consecutive sentences in this case fell below an objective standard of reasonableness.
{¶ 97} Appellant's second assignment of error is therefore overruled.
{¶ 98} Appellant's sentence is vacated and the case is remanded for resentencing in accordance with this opinion.
It is, therefore, ordered that appellant recover from appellee costs herein.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. The case is remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. AND DIANE KARPINSKI, J. CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] In its appellate brief, the State presents numerous details regarding the offenses that are not found anywhere in the record. Presumably these facts came from information contained in the Cuyahoga County Prosecutor's file. Although the State's reference to facts outside the record is not a problem in this case, we caution the State to limit its recitation of facts and argument in the future to evidence contained in the record.
[2] R.C. 2941.25(A) provides that where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
[3] Thus, State v. Daniels (Apr. 26, 2001), Cuyahoga App. No. 77998, relied on by the State, is not persuasive. In that case, the trial court specifically made a finding that consecutive sentences were not disproportionate to the seriousness of the defendant's conduct.